ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 1 3 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *v.* | Criminal Information |
| TERRELL KENNARD | 1:24-CR-239 |

THE UNITED STATES ATTORNEY CHARGES THAT:

## COUNT ONE
*(Wire Fraud Conspiracy – 18 U.S.C. § 1349)*

1.      From at least on or about May 3, 2020 through at least on or about January 6, 2021, in the Northern District of Georgia and elsewhere, the defendant,

**TERRELL KENNARD,**

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with Delano Finch, and others known and unknown, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, with the intent to defraud, caused interstate

wire communications to be made, in furtherance of the scheme and artifice to

defraud, in violation of Title 18, United States Code, Section 1343.

## Background

At times relevant to this Information:

2.       The defendant, TERRELL KENNARD, was a resident of Gwinnett

County in the State of Georgia. Defendant KENNARD was the owner of

Kennard Enterprises, LLC, which was formed under the laws of the State of

Georgia.

### The Paycheck Protection Program ("PPP")

3.       The PPP was a COVID-19 pandemic relief program administered by

the Small Business Administration ("SBA") that provided forgivable loans to

small businesses for job retention and certain other expenses. The PPP permitted

participating third-party lenders to approve and disburse SBA-backed PPP loans

to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and

other bills incurred by qualifying businesses during, and resulting from, the

COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

4.       To obtain a PPP loan, a qualifying business had to submit a PPP loan

application, which was signed by an authorized representative of the business.

The PPP loan application required the business (through its authorized

2

representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

5.      PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

6.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, personal automobiles, personal residences, clothing, or jewelry; to pay the borrower's personal federal income taxes; or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

Relevant Financial Institutions

7.    "Bank A" was a financial institution based in Teaneck, New Jersey,

that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank A

was an approved SBA lender of PPP loans.

8.    "Bank B" was a financial institution based in Salt Lake City, Utah,

that was insured by the FDIC. Bank B was an approved SBA lender of PPP loans.

### Purpose

9.    It was the purpose of the conspiracy for defendant KENNARD and

his coconspirators to unjustly enrich themselves by fraudulently obtaining PPP

loans under false and misleading pretenses and to conceal their conduct.

### Scheme to Defraud

10.    Defendant KENNARD, together with others known and unknown,

submitted, and caused to be submitted, fraudulent PPP loan applications

containing materially false information concerning, among other things, the

monthly payroll expenses and number of employees, and false and fraudulent

documentation purporting to substantiate the monthly payroll expenses and

number of employees at each of the entities.

11.    In effecting his scheme to defraud, defendant KENNARD solicited

and obtained from others business information, including among other things,

4

names, addresses, dates of birth, social security numbers, tax identification

numbers, business names and addresses, copies of voided checks, and bank

statements, from individuals in order to submit fraudulent PPP loan applications

on behalf of those individuals' purported entities.

12.     After defendant KENNARD obtained information from individuals

about their purported entities, he supplied that information to Delano Finch in

exchange for a fee.

13.     Delano Finch then submitted the PPP loan applications using the

information supplied by defendant KENNARD, but instead of submitting the

PPP loan applications containing true and correct information about, among

other things, the monthly payroll expenses and number of employees for each

entity, defendant KENNARD caused others to make up false monthly payroll

expenses and number of employees to be included on each application. For

example:

        a.  On or about May 27, 2020, Delano Finch submitted and caused the

            submission of a PPP loan application for a company, J's Barbershop

            and Hair Salon, which contained information obtained by defendant

            KENNARD and falsely claimed that the company had 6 employees

5

and an average monthly payroll expense of $60,000, and attached a

falsified Form 941 to the PPP loan application;

b.  On or about May 30, 2020, Delano Finch submitted and caused the

submission of a PPP loan application for a company, Builders and

Titans Real Estate Assets, which contained information obtained by

defendant KENNARD and falsely claimed that the company had 13

employees and an average monthly payroll expense of $136,400, and

attached a falsified Form 941 to the PPP loan application;

c.  On or about June 19, 2020, Delano Finch submitted and caused the

submission of a PPP loan application for a company, Showcator,

LLC, which contained information obtained by defendant

KENNARD and falsely claimed that the company had 8 employees

and an average monthly payroll expense of $118,404, and attached a

falsified Form 941 to the PPP loan application;

d.  On or about June 25, 2020, Delano Finch submitted and caused the

submission of a PPP loan application for a company, Araccot

Transportation, which contained information obtained by defendant

KENNARD and falsely claimed that the company had 12 employees

and an average monthly payroll expense of $138,000, and attached falsified Forms 940 and 941 to the PPP loan application.

14.     Defendant KENNARD caused others to certify that the information provided in the PPP loans applications and the information provided in all supporting documents and forms were true and accurate.

15.     Between in or about May 2020 and June 2020, defendant KENNARD caused the submission, via interstate wire communication, at least four PPP loan applications containing materially false information and false and fraudulent supporting documentation to approved SBA lenders.

16.     In total, Bank A and Bank B collectively funded fraudulent PPP loan applications submitted and caused to be submitted by defendant KENNARD in an amount of over $1 million.

17.     Defendant KENNARD charged and received, for his own personal gain, a fee in exchange for soliciting individuals to apply for PPP loans using false and fraudulent information.

All in violation of Title 18, United States Code, Section 1349.

### Forfeiture Provision

18.     Upon conviction of the offense alleged in this Information, the defendant, TERRELL KENNARD, shall forfeit to the United States, pursuant to

7

Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(a)(2), any property, real or personal, that constitutes or is derived from proceeds traceable to the offense, including but not limited to the following:

     a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Information.

19.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1)

8

and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described

above.


RYAN K. BUCHANAN
*United States Attorney*


ANGELA ADAMS
*Assistant United States Attorney*
Georgia Bar No. 613114

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181